Good afternoon. This is the Court. I'm James Laughlin, and I represent the appellant, Hobert Parker. And, of course, Commissioner, I'd like to give you three minutes of my time to rebuttal, and I will watch my own time. You watch it. I'll watch it, too. Okay, great. This case presents an interesting issue about whether the evidence at Mr. Parker's first trial was insufficient and whether he can get relief on this direct appeal, but the Court really doesn't need to reach that issue. The key question is how to interpret Section 1382, and it's one that's already been answered by this Court. Section 1382 prohibits unlawfully entering or reentering a military installation. Obviously, then, one of the elements the government must prove in a 1382 trial is that the defendant was actually on a military base for purposes of that statute. With regard to that, this Court and many others for the last 60-plus years have required the government to prove as an element of a 1382 offense its absolute ownership or exclusive right to the possession of the property upon which the alleged violation occurred. Contrary to what the government claims in its brief, this isn't an extra statutory requirement. Rather, it goes to the very heart of the statute whether the defendant was actually on a military base. And it's therefore an element called for by the text of the statute itself. Doesn't the statute say within the jurisdiction? It doesn't say within the exclusive. I believe the language of the statute is who goes upon any military, naval, or Coast Guard reservation post, port, arsenal, yard, station, or installation for any purpose prohibited by law. So what the absolute ownership exclusive right to the possession line of authority  And if you read that decision, you see that the district court judge appreciated that we have to, in these cases, we have to figure out what it means to go on a base. We have to figure out where the base is to figure out whether the defendant was actually on it. And I think the test that he came up with, which has been repeated frequently and has actually been adopted by the U.S. Attorney's Manual, makes sense. You have to have something that people can look at and obviously say, yes, that's a military base. Because that's what Congress intended when it enacted this statute. If you look at Albertini, the Supreme Court case of Albertini, they talk about the legislative history of this statute. And they say that it was, the first reason for it was to prevent saboteurs, but they recognized it had a broader purpose, which is to protect the property of the government, particularly military property and military bases. So common sense tells us that that means that's the property that the military puts behind the sign saying, this is a military base. The fence is saying, do not enter without permission of the installation commander. The guard shacks you have to check into before you can go through. These are all the outward exhibitions by the military telling the public, this is a military base. And that's what we don't have here, at least on Ocean Avenue. Because Ocean Avenue is a purely public road. And as I tried to paint the picture in the reply brief, if you're driving down that road, you don't see a sign saying you're driving on a road through Vandenberg Air Force Base. You are driving on a public road that's no different from the public road that you left a couple miles behind. You see on the right and to the left of you, fences and signs that clearly mark that as a military base. And you know the signs say if you cross that line, then you're going to be- The argument you're making right now would strike me as a very good argument if the issue here were mens rea, knowing that you're on the military base. But you know that at least the military is asserting it's part of the base. So the signs really don't do a whole lot, do they, for that? The question is really what the easement was here. Well, I understand that point, Your Honor. But what I would say is the military can say what it likes. But what this court has to do is interpret the intent of- What if they put a sign out in front of the road tomorrow that said, this is part of the base.  Then I think you have a much different situation like what was presented in Greer. Greer was a case where there were public roads going through the base, but there were signs saying, hey, you're entering a military base, and they also said, you know, you're- I thought your argument was less about the signs, although the signs help you, so I don't mean to dismiss that. But I thought it was more about the technical property issue. And it is. And I wanted to start out with a point where I think that just because the government said that implied that this was pulled out of thin air at some point and has nothing to do with the statute, this requirement that's been used by courts for 60 years about absolute ownership, exclusive right to possession, isn't pulled out of thin air. I think it's a legitimate and good attempt to try to define what the base property is. It seems to me that this is Ninth Circuit law, that it has to be either absolute ownership or the exclusive right to the possession of the property upon which the violation occurred. I'm wondering whether-has this statute been interpreted differently by other circuits? Some of the cases the governments have cited have-they haven't rejected that law, but they have used language that has not been that firm and definite. So I don't know that there's necessarily a conflict in circuits, but there's certainly courts that have looked at things and not so stripped away. But as I pointed out in the reply brief, even in those cases where you have something that you clearly don't have here, in each case somebody crossed a fence, they passed a line, they went past a white line, they went some-passed some clear- Forget all that again, because I agree with Judge Kavanaugh. I think the question is that given the law in the Ninth Circuit about absolute ownership or the exclusive right to the possession of the property, what is the effect of the public easement on the military's exclusive right to the possession of the property? I think the answer is very clear. Once the court recognizes what its case law holds, then an easement I think by its definition prohibits the government from having either absolute ownership or exclusive right to possession. Well, I think they-the government has absolute ownership. I mean, they own the property, but they granted an easement, a right to use the property to someone else. I guess what I interpret absolute ownership being like fee simple absolute, where you own every aspect of the property. Okay. Not subject to any other property interest. Correct. Okay. And maybe I'm misinterpreting that, but my understanding- Do you have support for that, or just- Well, I think nothing I can cite to you on a property case, but I think in the Saw Ridge what the court said when it was talked about, I mean, in that case there wasn't an easement, but when they were trying to say the kinds of things that would defeat absolute ownership, they cited, you know, it's not like there's an easement here. What interest does Santa Barbara County have in the road? The county under the memorandum of agreement between the county and the base, they have primary responsibility for enforcing criminal laws on that road. I do not know who has maintenance responsibilities when there's potholes and such. The base does retain concurrent jurisdiction to enforce traffic laws on that road under the memorandum of agreement. And then there's some indication, the government points out repeatedly that there's evidence in the record that the base can close the road on special occasions, like if there's a flood or if there's a missile launch, which really doesn't happen very often, and I think that's no different than kind of any public road. If there's ever a danger to the public and it needs to be closed temporarily, that's allowed. That doesn't show an element of control. Well, the U.S. military can't do that usually on just any public state road. Correct. That's what they're saying, but they can on this road. Correct. I mean, I think that some of the base employees who testified, it's unclear where their knowledge is coming from, so I'm not sure how sensitive it is to the record we have, and so there is some indication that sometimes they do that. My guess would be there's a good chance they do it in conjunction with the local authorities, that it's not something they do unilaterally, and I think that the other thing that the government points out again and again in its brief is that this is a closed base, and I agree with them that this is a closed base. And if you actually look at the memo, which is in the record at page 422 where the base commander says, I'm closing the base, he says, Pursuant to my authority, I hereby declare that Vandenberg Air Force Base is closed. It's a closed base. Non-military and DOD personnel are not to enter the installation without the express permission of the installation commander or the designee. The base itself, in real terms, is defined by that which is closed from the general public without the permission of the commander. That's not Ocean Avenue. Absent the government coming in and trying to do some kind of condemnation proceedings to take that easement back from the government, the base commander can't decide tomorrow, you know, I don't want these people on my street. I'm shutting it down. They don't have that kind of authority, and I think that kind of authority is the kind of absolute ownership, exclusive right to the possession that this circuit's case law requires. Was this road here before the base was established? Yes and no. The road was there. There was an easement for it, but at a certain point in the construction of the base, the road had to be moved somewhat. And in the second trial, there's some discussion with the engineer on that point. It's very complicated. But in the end, the finding of the magistrate judge, which the government doesn't challenge on appeal, was that Mr. Parker was on the easement at all times. But this exact road or something very similar to it has been here in the 60 years since. Now, thinking about the implications of your position are going forward for the military, they're going to think twice about opening roads through bases just because they're not going to want to deal potentially with what comes with that if your position were to prevail. Does that matter? I don't think that that's a valid concern, because what we have here is a public road that's there because of an easement that basically bisects rather than passes through Vandenberg Air Force Base. There's a south base and there's a north base. All around this base on its other borders, and presumably at every base around the country, there's always going to be public roads on the outside borders of the base that the military does not control, that the military does not own any property interest in. And even if they may contain some enforcement authority beyond those boundaries, they certainly can't maintain a 1382 prosecution on those roads. So whatever local and military enforcement options there are that are in place that protect the military's borders and all those other places, which is the vast majority of the time, they're still present on this road. The issue in this case is, is this an area covered, legitimately covered by the police? Okay. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Mark Yohalam on behalf of the United States. I want to dive right into the statutory issue. With respect to 1382, the Supreme Court has held, it's a general principle, but it's held to this statute specifically, that the court must follow the plain and unambiguous meaning of the statutory language. Here, that language is simply, whoever goes upon any military installation for any purpose prohibited by lawful regulation can be prosecuted. Defendant concedes on page 1 of his opening brief that Highway 248 was within the legal boundary of Vandenberg Air Force Base. So, and there's no question that defendant was on highway, on the shoulder of that highway. So under the plain meaning of the statute, there's just no question. Which Supreme Court case are you referencing? That's Albertini at page 680. The court says that courts must follow the plain and unambiguous meaning of the statutory language. But it's not so plain and unambiguous. That's the problem, right? When there's an easement granted to the state or local government for a road going through it. I actually disagree, Your Honor. I think that there's nothing ambiguous about whether someone has gone upon a military installation when they're within the legal confines of the military installation. And, you know, there's no ambiguity as to the language. There's certainly no place in that language that this exclusive right of possession absolute ownership comes from. To the contrary, it. Other than the U.S. Attorney's Manual makes that. The U.S. Attorney's Manual, first of all, is not a source of law. I know, but it's. I think the U.S. Attorney's Manual. It's a problematic fact for you, let's put it that way. I disagree, Your Honor. I mean, it's sort of an embarrassing fact. That's a good way to put it. Wait a second. I'm sure the U.S. Attorney's not planning on changing that at any time in the future because of the law in the Ninth Circuit that says, that has said what the standard is. I don't think that the Ninth Circuit has said what the standard is. The U.S. Attorney's Manual cites Mowat for that case. In Mowat, there was just an agreement between the parties that that was the standard that would apply in that case. That's still Ninth Circuit law. I disagree, Your Honor. They adopted it. I'm not sure. They adopted it, I mean. I'm not sure where the Court adopted it. The Court applied that standard, as in many cases the parties will say, whatever the standard is, the government prevails because even if the standard were absolute ownership, we have absolute ownership of the base in Hawaii. Ginsburg-McGill. I assure you that we don't just take the parties' view of the law when we're writing an opinion. I assure you that we do some independent thinking about whether we should apply that law. I promise you that. Your Honor, I'm absolutely confident that that's the case. However, the Court will also avoid issues where it need not resolve them because regardless of what standard applies, one party prevails. That's often a way the Court avoids addressing issues it doesn't have to. I submit that that's what happened in the Mowat case. In the Mowat case, the parties agreed to apply that standard because even under that standard, the government would prevail. All right. Let's just say that, you know, it happens to that standard applies in the Ninth Circuit manual. So maybe it's actually the standard. Could you argue your case around that standard and what's the impact of the easements and the MOU? Absolutely, Your Honor. Absolutely. I do want to just briefly say one thing, though, which is that you asked defense counsel whether any circuit has applied a different standard. In fact, the Sixth Circuit has. The Sixth Circuit is the only circuit to actually analyze this question. The Ninth Circuit decisions apply the standard, I agree. But there isn't, you know, there isn't a kind of analysis. The Sixth Circuit where the issue was litigated says. Which case? That's in the McCoy case. And did it involve a public easement? Yes, it did, Your Honor. And there they said that there was no basis for the absolute ownership requirement in the law of trespass or in the statute. But not to. Oh, go ahead. Right. Now you just figured a whole other thing, that the statute doesn't derive from the law of trespass, the common law of trespass, and that's in a Supreme Court decision. That's correct, Your Honor. Oh, never mind. Okay. That's why I wonder where the standard of absolute ownership could have possibly come from. It is, if you look at the 1948 case where it was applied, what went on there is that someone was driving across a road that was the only way to get off their property, a road over which an easement had existed, and the government said that the person had illegally entered upon a military base. There the Court said that ---- Is this the 1948 case? It is. Yeah. It just came out of thin air in that case. That's ---- But it's been applied, as Judge Wardlaw says, by this Court. And just on the MOA thing, not to beat that into the ground, but usually when a court does what you describe, it says, well, sue Mark Uendo, or this should not be taken as a final evaluation because the party loses regardless. I don't see that kind of language in MOA. I agree, Your Honor, and I think obviously it would be more favorable to the government if there were that kind of language. But even assuming that this Court had adopted that standard, there isn't, you know, there's nothing there to substantiate the argument that the existence of a public roadway easement destroys jurisdiction under 1382. And I'll explain why that is. In Greer and in Flower, there were public roadway easements. All right. Now, those are public forum cases, right? But they were ---- they both dealt with 1382. In Greer, it was an injunction against the application of ---- But they were analyzing a different question. They were analyzing whether the military base had become a public forum, whether by abandonment in, I think, the ---- that's Greer. And in Flowers, it went the other way. That's Dr. Spock going to Fort Dix, right? But those were public forum cases. They were, Your Honor. But I would submit that if it were an established principle that an easement destroyed the right to enforce Section 1382, those cases wouldn't have come out the way they did. Where a party is suing to enjoin the application of 1382 on a public roadway, the court wouldn't have gone to the constitutional question if the statutory question already resolved the case. What was the statutory issue raised in those cases? I'm not sure, Your Honor. The briefs are unavailable. But I would suspect that if the statutory issue were so obvious, that is, if the language required such a result, then under a principle of constitutional avoidance, the court would probably have been reluctant to reach the constitutional issue of the case. Scalia. Sometimes yes, sometimes no. Fisher. I understand, Your Honor. Even if we assume the exclusive or absolute ---- exclusive possession, exclusive right of ownership rule applies, it's just a phrase that, you know, doesn't have a lot of substance to it that answers what happens where there is an easement here. Whatever the rule means has to be consistent with the statutory text. It has to be consistent with the congressional intent. It has to be consistent with sort of the force of logic. I would suggest that to say that the military loses jurisdiction over a public roadway easement is contrary to all of those things. It's contrary to ---- I've already talked about the statutory text. I would submit it's contrary to the congressional intent because if you look back in 1908 when this passed, Albertini quotes some of the floor debates, and Congressman Moon says that one of the purposes for the law was to prevent the following situation. It is a frequent occurrence that people would come with carriages and conveyances onto the base and time and after time lure the soldiers away. Now, that clearly suggests that even in 1908 when this law was being dealt with, there were public roads going onto these military bases. And the conduct that was bothering the base commanders was soldiers going into those carriages on those public roadways. The military sought to have a way to keep those basically panderers who were bringing soldiers to brothels, keeping them off the base. If the existence of a public roadway across the base destroyed Section 1382 jurisdiction, then Section 1382 wouldn't have even addressed that problem. Now, it's possible that those bases in 1908 didn't have public easements across it. But if you look at what the Supreme Court has said in Albertini, their public easements across military bases are extremely common. They have been for a long time. And so But Albertini doesn't resolve the issue, right? That's a different, an open house. I absolutely agree. I note simply that Albertini does state that merely the fact of opening up a base to the public doesn't destroy the government's right to enforce 1382. And then in discussing it, you know, the point is raised that public easements do routinely cross military bases. So it would really be cutting back quite a bit of 1382's force. But this case is so inefficient because he didn't make any of the arguments that are being made here. I mean, first of all, he had a prior order of barment. And then he's arguing that it can't be indefinite and it can't apply when there's an open house to the public. And it can only be violated if he knows that his conduct violates an existing order not to return. So none of the arguments in that case are made in this case. Actually, I think the second one, the sort of notion of opening it up to the public is made in this case. It was an open house. I understand. But in addressing it. They invited them on to the base. This would be inviting Parker on to the actual base behind the lines and the checkpoints to come to an open house because the public's being admitted to the base for that reason. I agree. But in addressing that question, I think the Supreme Court looked at the broader issue of whether opening up a base to the public destroyed the jurisdiction. So a permanent open house, so to speak, on the road. I think this is less than a permanent open house on the road. The district court below, I'm sorry, the magistrate court below found that the purpose of this easement was simply for surface transit, that there had never been any other use of the roadway. So I don't think that this is analogous to the military having declared that Highway 246 is a permanent open house location. I would also say that I think in some ways defendant's argument is contradictory. He talks about these signage cases, and I know the court rightly said that that's not really the point here. But he looks at the Sixer case in La Valle and says that case is different because there the military had put up this snow fence on the easement. But if merely putting up a snow fence on an easement then allows the military to exert control over the space, then it's not clear that the easement is actually doing any work. It's merely the notice issue that's doing work in that case. So if here Vandenberg can reassert control over the highway simply by putting a sign up that says, you are now entering Vandenberg Air Force Base, we patrol these roads, we forbid protesting on the roads, see base orders, such and such. No, I don't think they could actually at this point because of the county's public easement. But in La Valle there was also a public easement, Your Honor. Not the terms of this public easement, the terms of it. In La Valle as well it was a public highway easement. The terms are no different. Then the only difference between these two cases is that in that case there was the snow fence that was set up and the protesters crossed the snow fence. But the snow fence was put on the easement. Likewise in this case, the defendant makes a big deal about him not having crossed the green boundary line. But as best I can tell, the green boundary line is also on the easement. It doesn't demarcate the edge of the easement. It's just an arbitrary line that runs along the highway. If that's sufficient for the government to have control, to exercise control, then again the easement isn't what's doing the work there. It's this notice issue. The notice issue isn't relevant here because it's undisputed that the defendant knew that he was on territory that the base was exerting control over. They warned him the first time and didn't ticket him the first time. They gave him warnings. They showed him the base orders. It wasn't until he came back. They told him he was where he wasn't allowed to be. They offered him an opportunity to leave. And he wouldn't leave. The other way in which I think defendant's argument proves too much is if it's the case that the military can't enforce 1382 on Ocean Avenue or Highway 246, then even during a missile test, the military has no means of punishing someone who enters illegally onto the base so long as they're staying on the highway. That is, if the military puts chains up across Highway 246 and Mr. Parker crawls under the chains and starts walking down the road protesting, under defendant's view, he couldn't even be prosecuted in that situation because his view is that the military has no right whatsoever to prosecute anyone for any reason under 1382. And I think that would be a fairly remarkable result. It would basically mean that where a military has public roads running through it, those public roads can never be shut down for base security purposes or certainly no one can ever be prosecuted for going on afterwards. There's, again, nothing in the statute that would support that fact. And to the contrary, I would say the military's practice of permitting public easements across its land strongly indicates that the military didn't understand that by doing so, it was giving up their right to perform. Well, that's an argument for Congress. They could easily change this statute. Yes, although I'm not sure what language would need to be added into this statute. I mean, would it say anyone who goes upon a military base, including a military base that has a public easement on it? I mean, to me, that would seem to be superfluous. It would certainly correct, you know, it would effectively overrule it. Congress could easily say easements don't constitute or don't deprive the military of absolute ownership of the base. Yes, that's true. Congress could remedy any adverse precedent. And are you arguing that the military has absolute ownership, exclusive right to possession, or both? I think it has both. It has ownership in fee simple of the property, which I think is sufficient ownership to satisfy what was meant by absolute ownership in the Watson case. In the Watson case, and I realize I'm over my time. Yeah, I don't need more on that because I think I have the ‑‑ I just wanted to get your answer on the two prongs. And then I have one other factual question, which is, is this statute applied to military bases abroad? Or do you know? If you don't know, that's fine. I have no idea. I would assume there's no territorial ‑‑ Don't assume. Just say you don't know. Just say you don't know. There's no territorial restriction in the statute. It says within the jurisdiction, and I was wondering if that meant within the territory of the United States or just meant places where the U.S. has a base. I think it means within the military jurisdiction of the base. But I've seen no precedent on that. All right. Thank you, counsel. Thank you. Thank you. Just a couple of points. First of all, this idea that all anarchy would break loose on Ocean Avenue if you don't do Mr. Parker's favor I don't think is very realistic. Again, like any road in the state, state authorities and concurrent jurisdictions, perhaps base authorities, have ability to regulate conduct that might be ‑‑ Now, what about the hypothetical that was raised where the military puts up a fence or closes the road, I'm sorry, for a test or something else, and someone breaks through the fence and then is just on the road? Well, there you actually have a situation very much like the Sixth Circuit case of Love Alley. And I would say in that case the dissent had the much better argument. The dissent ‑‑ So it's okay, the statute doesn't apply even if you blow through the fence? Well, no, I think what the dissent correctly noted was a base commander can't unilaterally take back an easement that was granted through official documents by the federal government to the state government. And I think that was the correct point. I think in this case, even under the majority opinion, in the scenario your Honor described, if you applied majority decision, somebody crossing that temporary fence, which is at least temporarily putting the lineups and the signs saying, because in Love Alley they had the same signs that are posted on the side of Vandenberg Air Force Base, this is a U.S. Air Force installation, you do not cross this line, you do not enter without the permission of the installation commander. So at least in that context, temporarily setting up a boundary of ‑‑ I understand why you're making that argument because it helps your client win this case, but in terms of a workable rule going forward, it's interesting that the military could just get around what would be the ruling in this case just by posting a sign. Right, and as I said, if I get that case down the road, I'm arguing the dissent's position in Love Alley. I don't think that's the correct position. But I don't think that the majority opinion is fatal to this case. I don't have anything else. All right, well, thank you very much, counsel. United States v. Parker is submitted, and this session, this court will be adjourned for today. Thank you. All rise for the session to adjourn.
judges: Kavanaugh, Fletcher B. , Wardlaw